ATTORNEYS FOR APPELLANT
W. Anthony Walker
Lucas I. Cohen
Gary, Indiana

ATTORNEY FOR APPELLEES
Beth L. Brown
Crown Point, Indiana



FILED

Dec 10 2009, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 45S05-0904-CV-145

GARY COMMUNITY SCHOOL CORPORATION,

*Appellant (Defendant below),*

v.

LOLITA ROACH-WALKER AND VICTOR WALKER,

*Appellees (Plaintiffs below).*

Appeal from the Lake Superior Court, No. 45D04-0609-CT-262
The Honorable Gerald N. Svetanoff, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A05-0805-CV-275

**December 10, 2009**

**Boehm, Justice.**

The Indiana Tort Claims Act confers immunity on units of government from liability for injuries caused by "[t]he temporary condition of a public thoroughfare . . . that results from weather." We hold that this provision bars claims for injuries sustained during the time reasonably required for the governmental unit to respond to weather conditions. The governmental unit bears the burden of establishing its claim to immunity and in this case the Gary Schools did not carry its burden, so we affirm the judgment of the trial court in favor of the plaintiffs.

**Facts and Procedural History**

On Saturday, February 5, 2005, Lolita Roach-Walker took her children to Bailly Middle School to attend enrichment classes conducted with the school's permission by the Gary Historical Society, an independent nonprofit organization. As Lolita approached the entrance to the school, she slipped and fell on the walkway. Lolita did not see what contributed to her fall before she fell. A witness described the area where Lolita slipped as "slick" and "wet looking" after the fall. The record as to weather conditions is inconclusive. No evidence established the most recent rain, snow, or sleet, but there was testimony that there had been no precipitation that day or the night before the accident. Lolita testified that the sky was clear that day and that the temperature was "kind of" cold. There were no other reports of slip-and-fall incidents on the walkway that day.

Lolita and her husband, Victor Walker, sued the Gary Community School Corporation ("GCSC"), claiming negligence in maintaining the walkway, and seeking damages for Lolita's injuries and for Victor's loss of consortium. At the close of the Walkers' evidence, GCSC moved for a directed verdict, contending that the Indiana Tort Claims Act ("ITCA") conferred immunity from liability because Lolita's fall occurred as a result of temporary conditions caused by the weather. The trial court concluded that immunity raised disputed factual issues and denied that motion. After both parties rested, GCSC tendered a proposed jury instruction on immunity which the trial court refused. The jury found for Lolita on the negligence claim and awarded $90,000. GCSC appealed, arguing that the trial court erred in denying its motion for a directed verdict and in refusing its proposed jury instruction.

The Court of Appeals affirmed, reasoning that immunity is a question of law, so the issue was not to be submitted to the jury, and that GCSC had failed to demonstrate it was entitled to immunity as a matter of law. Gary Cmty. Sch. Corp. v. Roach-Walker, No. 45A05-0805-CV-00275, 2008 WL 5412896, at *6 (Ind. Ct. App. Dec. 31, 2008). We granted transfer.

**I. Governmental Liability and Immunity**

A traditional formulation of tort liability requires the plaintiff to establish a duty, breach of that duty, proximate cause, and damages. 1 Dan B. Dobbs, The Law of Torts § 114, at 269

2

(2001). Immunity trumps all of these and bars recovery even where ordinary tort principles would impose liability. Thus, for example, the government and its employees are immune from liability for the "initiation of a judicial or an administrative proceeding," even if the action was taken in breach of a duty to act competently and in the public interest. Ind. Code § 34-13-3-3(6) (2008). Whether an immunity applies is a matter of law for the courts to decide. Hochstetler v. Elkhart County Highway Dep't, 868 N.E.2d 425, 426 (Ind. 2007); Mangold v. Indiana Dep't of Natural Res., 756 N.E.2d 970, 975 (Ind. 2001). The party seeking immunity bears the burden of establishing the immunity. Hochstetler, 868 N.E.2d at 426. If the facts allow multiple reasonable conclusions as to an element triggering the immunity, then the governmental unit has failed to establish its immunity. See Peavler v. Bd. of Comm'rs of Monroe County, 528 N.E.2d 40, 46 & n.1 (Ind. 1988). Of course, the government may still escape liability if it can demonstrate it owed no duty to the plaintiffs, did not breach its duty, or did not cause any damages.

A. *Common Law*

In Indiana as in other states, governmental entities traditionally enjoyed a broad immunity from tort liability for their actions. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 131, at 1051–52 (5th ed. 1984). One important exception to the general rule of governmental immunity was the recognition of a common law duty of municipalities to maintain public roads and sidewalks in reasonably safe conditions. E.g., Glantz v. City of South Bend, 106 Ind. 305, 309, 6 N.E. 632, 634 (1886) ("It was the duty of [the city] to keep all its streets, sidewalks, and crossings in a reasonably safe condition, and free from unnecessary and dangerous obstructions, so as not to endanger the persons of those lawfully using the same, and it was liable under the law for negligently suffering them to become and remain unsafe to anyone injured thereby."). Some jurisdictions described street maintenance as a "proprietary" activity similar to, for example, operating a municipal electric utility, and explained the government's exposure to liability as arising from the doctrine that the government's proprietary acts are not within its "governmental" immunity. E.g., Taylor v. City of Newport News, 197 S.E.2d 209, 210 (Va. 1973). Others found the maintenance of thoroughfares to be "mandatory" rather than "discretionary" and therefore outside the government's immunity. E.g., Bunch v. Town of

3

Edenton, 90 N.C. 431, 433–34 (1884). The drawing of these lines has been described as "inexplicable." Keeton et al., supra § 131, at 1054.

Whatever its theoretical underpinning, the duty to maintain roads did not render the government strictly liable for all defective conditions. Michigan City v. Boeckling, 122 Ind. 39, 40–41, 23 N.E. 518, 518 (1890). Rather, the courts recognized a "legal obligation" of a governmental entity to "exercise ordinary care and skill in making and keeping its streets in a reasonably safe condition for travel by persons who exercise ordinary care." Id. at 41; 23 N.E. at 518. Specifically, at common law a governmental entity was not liable for injuries caused by "accumulation of snow or ice through natural causes" in public streets and sidewalks that result in a "general slippery condition." City of Linton v. Jones, 75 Ind. App. 320, 322, 130 N.E. 541, 542 (1921); accord Waterman L. Williams, The Liability of Municipal Corporations for Tort § 99, at 161–63 (1901) (citing cases where negligent maintenance created liability). In sum, whether viewed as an exception from immunity or as a freestanding source of liability, unlike most governmental activities, liability for maintenance of thoroughfares was largely governed by ordinary negligence principles.

B. *The Indiana Tort Claims Act*

Like many other jurisdictions, Indiana abolished common law sovereign immunity for all government activities in a series of judicial decisions in the 1960s and early 1970s. Campbell v. State, 259 Ind. 55, 63, 284 N.E.2d 733, 737–38 (1972) (abrogating immunity for the state); Klepinger v. Bd. of Comm'rs of Miami County, 143 Ind. App. 155, 166, 239 N.E.2d 160, 172–73 (1968), trans. denied, (abrogating immunity for counties); Brinkman v. City of Indianapolis, 141 Ind. App. 662, 666, 231 N.E.2d 169, 172–73 (1967), trans. denied, (abrogating immunity for municipalities); Keeton et al., supra, § 131, at 1052. As a result of these decisions, most activities of government entities were exposed to liability under traditional tort theories. Campbell, 259 Ind. at 63, 284 N.E.2d at 737–38. In response, the Indiana General Assembly passed the ITCA. Acts 1974, Pub. L. No. 142, § 1 (1974) (current version at I.C. § 34-13-3). This statute granted absolute immunity to governmental entities in a number of specific circumstances, and codified rules of liability for other areas of governmental activity. Compare I.C. § 34-13-3-3(4) (conferring immunity for the condition of some unpaved roads, trails and

4

foot paths) and I.C. § 34-13-3-3(6) (immunity for judicial acts) with I.C. § 34-13-3-3(5) (immunity for the design of an extreme sports facility, but expressly recognizing a duty to maintain the area in an overall safe condition).

The portion of the ITCA relevant to this case has remained unchanged since its inception. It states:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from
>
> . . .
>
> (3) The temporary condition of a public thoroughfare . . . that results from weather.

I.C. § 34-13-3-3(3). In the first case addressing a municipality's liability under this provision, the Court of Appeals described the ITCA as "little more than a codification of the common law" as it pertained to natural accumulation of snow and ice. Walton v. Ramp, 407 N.E.2d 1189, 1191 (Ind. Ct. App. 1980). Since Walton, the Court of Appeals and this Court have continued to rely on common law precedents in interpreting subsection (3)'s immunity for conditions caused by weather. E.g., Catt v. Bd. of Comm'rs of Knox County, 779 N.E.2d 1, 4 (Ind. 2002) (citing City of Muncie v. Hey, 164 Ind. 570, 574, 74 N.E. 250, 251 (1905)); Van Bree v. Harrison County, 584 N.E.2d 1114, 1117–18 (Ind. Ct. App. 1992), trans. denied, (citing Ewald v. City of South Bend, 104 Ind. App. 679, 683–84, 12 N.E.2d 995, 996–97 (1938)).

These cases demonstrate that the immunity afforded by subsection (3) is narrower than the immunity established by some other provisions of the ITCA. In Catt, a driver sustained injuries stemming from a culvert that was washed out by a torrential rain. Catt, 779 N.E.2d at 2. We noted that immunity analysis under subsection (3) required that the condition be both "temporary" and "caused by weather." Id. at 5. We concluded that a temporary condition was one which the governmental body has not had "the time and opportunity to remove." Id. Lack of notice of the condition and the demands of responding to other emergencies bear on the opportunity to remedy it. Id. at 6. In Hochstetler, a major storm felled and scattered scores of trees and limbs on public roads. Hochstetler, 868 N.E.2d at 426. A few hours later, a driver was injured when he struck a fallen tree on a county road. Id. Recognizing that the storm had caused

5

the condition and that the county crews were remedying the situation caused by the storm, we held that the condition was temporary as a matter of law. Id. at 427. In both cases whether a condition was "temporary" ultimately hinged on whether the governmental entity had a reasonable opportunity to remedy conditions initially caused by weather. And in both cases there was no reasonable opportunity to respond to all of the conditions caused by the weather. Id. at 426–27; Catt, 779 N.E.2d at 5–6. Thus, in each case we held that the condition was within the immunity afforded by subsection (3). Hostetler, 868 N.E.2d at 426–27; Catt, 779 N.E.2d at 5–6. In sum, these cases established that the government may be liable for negligence in maintaining roads, but when the government is in the process of responding to a weather condition, as a matter of law the immunity conferred in subsection (3) for "temporary conditions caused by weather" extends to all claims caused by that condition during the period of reasonable response, whether the alleged injury occurred early or late in that period.

## II. The Walkers' Claim

A school sidewalk is a public thoroughfare subject to subsection (3). Yerkes v. Heartland Career Center, 661 N.E.2d 558, 561 (Ind. Ct. App. 1995), trans. denied. The parties dispute only whether Lolita's fall resulted from a "temporary" condition "caused by weather." GCSC argues that the defective condition was a result of the natural accumulation of ice and snow in the winter time. Specifically, GCSC argues that there had been no precipitation the few days preceding Lolita's accident and nobody else had slipped on the walkway, therefore the condition was due to the normal thawing and freezing of a thin layer of ice that occurred naturally in winter. GCSC also argues that it had no notice of the defective condition that contributed to Lolita's fall and therefore had no opportunity to remedy the condition. For both of these reasons, GCSC contends it is immune as a matter of law. Even if it was not entitled to immunity as a matter of law, GCSC argues that the trial court's refusal to give its proposed instruction on immunity was reversible error. Finally, GCSC suggests that all icy conditions should be rebuttably presumed to be temporary, effectively shifting the burden to the plaintiffs to disprove immunity.

Lolita counters that the lack of recent precipitation and the fact that no one else slipped on the walkway suggest that sufficient time had passed that GCSC had the opportunity to remedy the condition and breached a duty to do so.

6

We conclude GCSC failed to demonstrate that it was entitled to immunity as a matter of law. The record reasonably supports both GCSC's and Lolita's explanation of the facts. The record does not indicate whether the temperature had fallen below freezing, and if so whether this occurred for the first time that morning, or whether the temperature had remained consistently below freezing for the preceding few days. There is no indisputable evidence establishing whether Lolita fell on an isolated ice patch that resulted from temporary cold that morning, or on a sheet of ice that had been there for days, or something else. Indeed, there was no showing of any unusual recent weather condition. Because immunity is a matter of law for the court to decide, the trial court properly refused GCSC's proposed jury instruction.

GCSC argues that it had no notice of the condition and that in itself establishes that the condition was temporary. We do not agree. Notice of a condition (e.g., the washed-out culvert in Catt) may be relevant to whether there was an opportunity to remedy it, particularly if the condition is the result of a sudden change. But here we have a condition in an area that is, or should be, regularly patrolled, and if attributable to weather at all, may have persisted for several days. Even if attributable to weather, because GCSC has not established that it had no opportunity to cure the condition, GCSC has not established that the condition was "temporary." Accordingly, GCSC failed to establish immunity under the ITCA.

GCSC's remaining arguments—that GCSC's policy was to remove snow and ice only when there was a "school event," that the accumulation on the sidewalk was not an "obstruction to travel," and that GCSC is not obligated to remove all snow and ice from its sidewalk—go to the issue of negligence and not to immunity. GCSC has a duty to keep the sidewalk in a reasonably safe condition. Determining whether GCSC breached that duty raised factual issues that were resolved by the jury.

Finally, we decline GCSC's request to adopt a rebuttable presumption that all icy conditions are temporary. Because the ITCA is in derogation of the common law, we construe the act strictly against limiting a claimant's right to bring suit. Mullin v. Municipal City of South Bend, 639 N.E.2d 278, 281 (Ind. 1994) (citing Hinshaw v. Bd. of Comm'rs of Jay County, 611 N.E.2d 637, 639 (Ind. 1993)). We have consistently held that the municipality seeking the immunity bears the burden of establishing it. Hochstetler, 868 N.E.2d at 426. Adopting the

7

GCSC's presumption would shift the burden of proof of immunity to the claimants, which the General Assembly has not seen fit to do.

## Conclusion

The judgment of the trial court is affirmed.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.